IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| DON TANGWALL, <br><br> Plaintiff, <br><br> vs. <br><br> RANDAL SPAULDING, <br> Musselshell County District Judge, <br> DAVID CYBULSKI, <br> Sheridan County District Judge, <br> WILLIAM NELS SWANDAL, <br> Park County District Judge, <br><br> Defendants. | CV-11-39-BLG-RFC-CSO <br><br> **ORDER and FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Don Tangwall ("Tangwall"), appearing *pro se*, is suing Montana state district court judges Randal Spaulding ("Spaulding"), David Cybulski ("Cybulski"), and William Nels Swandal ("Swandal"). He is also suing Mike McGrath ("McGrath"), Chief Justice of the Montana Supreme Court.[1] He seeks injunctive relief. *1st Am. Cmplt. (Court Doc. 4) at ¶¶ 4-6, 30-32, 42-44, 56-58, and 72-73.*

---

[1]Tangwall did not include McGrath as a named defendant in the case's caption. Because Tangwall makes allegations and asserts a claim against McGrath in the Amended Complaint's text, the Court assumes that Tangwall intended to name McGrath as a defendant.

Now pending are Defendants' Motion to Dismiss *(Court Doc. 9)* and Tangwall's Motion to Strike *(Court Doc. 13)*. Having reviewed the record, together with the parties' arguments in support of their positions, the Court: (1) recommends that Defendants' motion to dismiss be granted; and (2) denies Tangwall's motion to strike.

I. **BACKGROUND and TANGWALL'S CLAIMS**

Tangwall alleges generally that in cases he had before the Defendant state district court judges, they failed to be impartial. He also alleges that each state district court judge violated Montana law by not being bonded. He alleges McGrath has a conflict of interest in Tangwall's cases now before the Montana Supreme Court because of McGrath's involvement in them while he was Montana's Attorney General.

Tangwall's specific allegations are as follows:

With respect to the state district judges, Tangwall alleges they: (1) "compromised" his due process rights in some of his court cases over which they presided, *Court Doc. 4 at ¶¶ 22, 36, and 48*; (2) were "biased and prejudiced" in the cases, *id. at ¶¶ 22, 26, 29, 36, 40, 41, 48, 52, and 55*; and (3) failed to obey state law by not being bonded, *id. at ¶¶ 25, 39, 51*.

2

For his relief against the state district court judges, Tangwall requests injunctions that: (1) void all Spaulding orders against Tangwall after March 14, 2008, *id. at ¶ 30*; (2) void all Spaulding orders for his failure to be bonded as Montana law requires, *id. at ¶ 31*; (3) prohibit Spaulding from "tampering, hindering and interfering in any cases in which Tangwall is a party[,]" *id. at ¶ 32*; (4) void all Cybulski orders against Tangwall after February 8, 2011, *id. at ¶ 42*; (5) prohibit Cybulski from "tampering, hindering, and interfering in any cases in which Tangwall is a party[,]" *id. at ¶ 43*; (6) void all Cybulski orders for his failure to be bonded as Montana law requires, *id. at ¶ 44*; (7) void all Swandal orders against Tangwall, *id. at ¶ 56*; (8) void all Swandal orders for his failure to be bonded as Montana law requires, *id. at ¶ 57*; and (9) prohibit Swandal from "tampering, hindering and interfering in any case in which Tangwall is a party[,]" *id. at ¶ 58*.

With respect to McGrath, Tangwall alleges that, while serving as Montana's attorney general, McGrath refused to take action on Tangwall's report to him that "all county officers, and employees must be bonded" under state law. *Id. at ¶¶ 67, 69-70*. He also alleges that "McGrath has

3

tampered, interfered and hindered a case" McGrath's office handled when he was Montana's attorney general. *Id. at ¶ 71*.

For his relief against McGrath, Tangwall seeks an injunction that: (1) voids all McGrath orders "for his conflict of interest[,]" *id. at ¶ 72*; and (2) prohibits McGrath from "any further interference, tampering and hindering in any cases in which Tangwall is a party[,]" *id. at ¶ 73*.

Finally, Tangwall seeks costs. *Id. at ¶¶ 33, 45, 59, and 74*.

## II. **MOTION TO DISMISS**

### A. **Parties' Arguments**

Defendants base their motion to dismiss on two principal arguments.[2] First, they argue that this Court lacks subject matter jurisdiction under Rule 12(b)(1).[3] They argue that Tangwall brought this action as "a de facto appeal[,]" a maneuver precluded by the *Rooker-Feldman* doctrine. *Defts' Br. in Support of Mtn. to Dismiss (Court Doc. 10) at 8-10*.

---

[2]Because subject matter jurisdiction is a threshold issue, the Court addresses Defendants' arguments in reverse order from the order in which they raise them.

[3]References to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

4

Second, Defendants argue that Tangwall has failed to state a claim against them upon which relief can be granted under Rule 12(b)(6). Defendants argue that, as sitting judges performing functions as such, they are shielded from liability in this action by the doctrine of judicial immunity. *Id. at 5-8*.

Tangwall failed to respond to either of Defendants' specific arguments other than to call the state court judges "imposters" who failed to abide by the law that they swore to uphold. *Pltf's Resp. to Defts' Mtn. to Dismiss (Court Doc. 12) at 1-4*. Rather, Tangwall argues that the judges are not state employees and thus must be bonded under Montana law. *Id*. He adds that McGrath, while attorney general, failed in his duty to enforce the state statute Tangwall alleges requires all county officers and employees to be bonded. *Id. at 3*.

In reply, Defendants reiterate that "Montana district court judges are not county employees." *Defts' Reply (Court Doc. 17) at 2*. They argue that: (1) district court judges serve several counties within their district and are elected by voters for all of those counties, so "[i]t would be illogical to consider them county employees[,]" *id*.; (2) § 2-9-601, MCA, exempts

5

supreme court justices and district court judges, among others, from the state employees' bonding requirement, which shows that they are considered state employees, *id*.; and (3) they enjoy absolute judicial immunity as noted in their opening brief, *id*.

B. **Discussion**

1. **The *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine emerged from two United States Supreme Court cases. *See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).* The doctrine "bars federal district courts 'from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment.'" *Wolfe v. Strankman, 392 F.3d 358, 362-63 (9th Cir. 2004) (quoting Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004))*. The Ninth Circuit has explained the doctrine as follows:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

6

*Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 11654 (9th Cir. 2003)).

The Supreme Court recently reaffirmed that the *Rooker–Feldman* doctrine occupies "narrow ground," *Skinner v. Switzer*, ___ U.S. ___, ___, 131 S.Ct. 1289, 1297 (2011), and affirmed its earlier holding that the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id., citing Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, (2005). "[W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel*, 341 F.3d at 1156. "Once a federal plaintiff seeks to bring a forbidden de facto appeal …, that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Id.* at 1158.

7

Here, it cannot be said that Tangwall's action falls entirely within the *Rooker-Feldman* doctrine's narrow application. As noted, Tangwall claims that Spaulding, Cybulski, and Swandal violated his due process rights in some of his cases before them. *Court Doc. 4 at ¶¶ 22, 36, and 48*. Also, Tangwall alleges that McGrath has a conflict of interest in hearing some of Tangwall's cases now before the Montana Supreme Court. *Id. at ¶¶ 62 and 71-73*. These claims do not appear to be ones that Tangwall litigated in the state court, or claims upon which any court entered judgment that Tangwall is now attempting to appeal through this action. Thus, the Court cannot conclude that Tangwall's entire action runs afoul of *Rooker-Feldman*.

It may be, however, that Tangwall is attempting through this action to appeal from certain state court judgments. For example, he has attached as Exhibit I to his First Amended Complaint a Default Judgment that Judge Cybulski entered against him in an action in the Montana Fourteenth Judicial District Court. *Court Doc. 4-3 at 1-2*. He also has attached as Exhibit J an Order of Dismissal of a different action against Judge Spaulding and other defendants that Judge Swandal entered

8

against him in the Fourteenth Judicial District Court. *Id. at 3-4.* And, he attached as part of Exhibit N a Judgment on a counterclaim against him in the Fourteenth Judicial District Court entered by Judge Cybulski. *Id. at 14-16.* Although it is not entirely clear whether or how Tangwall is proceeding with this action to appeal those judgments, to the extent he is, under the foregoing authority such claims are barred under the *Rooker-Feldman* doctrine.

In any event, as set forth below, the Court concludes that Tangwall's action is subject to dismissal on other bases.

2. **Judicial Immunity**

Although Tangwall's entire action may not fall under the *Rooker-Feldman* doctrine, dismissal of all of his claims is nevertheless required for other reasons. As an initial matter, judges enjoy absolute immunity from lawsuits for actions taken in their official judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996) (superceded by statute on other grounds). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11. As such, "judicial immunity is not

9

overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id*.

"Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of 'appellate procedures as the standard system for correcting judicial error ... Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review.'" *In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002) (citation omitted)*. This immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (citation omitted)*. "Grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity." *Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir.), cert. denied, 488 U.S. 995 (1988) (quoting Stump v. Sparkman, 435 U.S. 349, 35-57 (1978))*.

Two principal exceptions exist to judicial immunity: first, when a judge acts outside of his or her judicial capacity; and second, when a judge's action, "though judicial in nature, is taken in the complete absence

of all jurisdiction." *See Mireles*, 502 U.S. at 11-12. Also, judicial immunity does not bar claims for prospective injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).

In the case at hand, neither of the recognized exceptions to application of judicial immunity applies. First, Tangwall's allegations against Spaulding, Cybulski, and Swandal relate directly to actions taken in their official capacity as judges. Tangwall concedes this through his allegations that their actions about which he complains were "done under color of law" while each was "purporting to be a county judge." *Court Doc. 4 at ¶¶ 23, 37, and 49.*

Second, the judges' acts about which Tangwall complains – presiding over and issuing orders in cases in which he was involved – were well within their jurisdiction as state district court judges. Montana law specifically provides that the district courts are "courts of justice of this state[.]" § 3-1-101, MCA; *see also* MONT. CONST., art. VII, § 1 ("The judicial power of the state is vested in . . . district courts . . . and such other courts as may be provided by law").

Montana's Constitution provides that district court's have "original

jurisdiction in . . . all civil matters and cases at law and in equity." MONT. CONST., art. VII, § 4. In addition, Montana statutory law provides that judicial officers of the state district courts have the power to "preserve and enforce order . . . in proceedings before the officer when the officer is engaged in the performance of official duties [and] . . . compel obedience to the officer's official orders[.]" § 3-1-402, MCA.

In short, Tangwall's claims against the judges all stem from acts they performed in their judicial capacity and within their jurisdiction as state district court judges. Thus, they are entitled to judicial immunity except to the extent Tangwall seeks prospective injunctive relief. *See Pulliam*, 466 U.S. at 541-42.

As noted, Tangwall requests injunctions that void all orders issued by Spaulding, Cybulski, and Swandal. *Court Doc. 4 at ¶¶ 30-31, 42, 44, and 56-57.* This requested relief is directed at past acts and, therefore, is not prospective. Thus, Spaulding, Cybulski, and Swandal enjoy absolute judicial immunity with respect to these claims.

Tangwall also requests injunctive relief prohibiting any of the judges from "tampering, hindering and interfering in any case in which Tangwall

12

is a party[.]" Id. at ¶¶ 32, 43, and 58. Arguably, with this request Tangwall asserts claims for prospective injunctive relief. The Court concludes that these claims fail, however, for two primary reasons.

First, Tangwall brings this action under 42 U.S.C. § 1983. Congress amended § 1983 in 1996 to prohibit the grant of injunctive relief against any judicial officer acting in his or her official capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Here, Tangwall has neither alleged in his Amended Complaint nor argued in response to Defendants' motion that any Defendant violated a declaratory decree or that declaratory relief was unavailable to him. His remaining claims fail for this reason alone.

The Court also notes that Tangwall has otherwise failed to state a facially plausible claim. His allegations assert merely that the state district court judges were biased against him. This is not sufficient to state a claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief." (internal quotation marks,

alteration omitted)).

Under the above authority and for all of the foregoing reasons, the Court recommends that the motion to dismiss be granted to the extent it relates to the claims against the Defendant state district court judges. In so recommending, the Court notes that the deficiencies in Tangwall's Amended Complaint cannot be cured by amendment in light of the type of action and the nature of relief sought.

With respect to Tangwall's claim against McGrath, Tangwall alleges that "McGrath has tampered, interfered and hindered a case in which his office as attorney general represent[ed] a party in the action" and thus that now-Chief Justice McGrath has a conflict of interest. *Id. at ¶¶ 71-72*. This claim also relates to McGrath's actions taken in his official capacity as a judge. Tangwall alleges that McGrath's actions also "were done under color of law" because of McGrath's current position as "a Montana Supreme Court Justice." *Id. at ¶ 62*. For the same reasons and under the authority discussed above, McGrath is absolutely immune from suit and Tangwall has otherwise failed to state a facially plausible claim against him. No amendment of Tangwall's Amended Complaint could cure its

14

deficiencies. The Court therefore recommends that the motion to dismiss be granted to the extent it relates to the claim against McGrath.

## III. **MOTION TO STRIKE**

Tangwall moves to strike Defendants' motion to dismiss and supporting brief. *Mtn. to Strike (Court Doc. 13)*. He argues that Defendants' attorneys, Montana Attorney General Steve Bullock and Assistant Attorney General J. Stuart Segrest, are not bonded as required under Montana law and thus "lack standing to represent anyone before this Court[.]" *Tangwall's Br. (Court Doc. 14) at 1*.

In response, Defendants argue that whether their attorneys are bonded "has nothing to do with whether [their attorneys] have the authority to represent" them. *Defts' Resp. to Mtn. to Strike (Court Doc. 16) at 2*. They also represent that the Montana Department of Administration "has procured fidelity bond insurance through Great American Insurance Company for all 'state officers and employees,' in conformance with [§ 2-9-602, MCA]." *Id*.

Tangwall has cited no authority, and the Court is aware of none, that requires attorneys representing clients in this federal forum to be

bonded. Requirements for admission to and practice before this Court are ser forth in Local Rule 83.3. Being "bonded" is not required. The basis for Tangwall's motion to strike is clearly incorrect. The Court, therefore, will deny Tangwall's motion to strike.

IV. **CONCLUSION**

For the reasons above, IT IS ORDERED that Tangwall's motion to strike *(Court Doc. 13)* is DENIED. Also,

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion to Dismiss *(Court Doc. 9)* be GRANTED and that Tangwall's Amended Complaint be DISMISSED, with prejudice.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 23rd day of June, 2011.

**/S/ Carolyn S. Ostby**
United States Magistrate Judge